IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM B. GILLARD, JR., *et al.* **Plaintiffs** v. RECEIVABLES PERFORMANCE MANAGEMENT, LLC **Defendant** | CIVIL ACTION NO. 14-02392 |

PAPPERT, J.                                                                  JUNE 1, 2015

## MEMORANDUM

Plaintiffs William B. Gillard, Jr. ("William") and Alicia Gillard ("Alicia") (collectively "the Gillards"), have sued Defendant Receivables Performance Management, LLC ("RPM") for violation of the Telephone Consumer Protection Act ("TCPA"). The Gillards allege that RPM placed non-emergency calls to their cell phones using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice without their express consent, in violation of the TCPA. Both the Gillards and RPM now move for summary judgment. The Gillards move for summary judgment in their favor on the issue of whether RPM called them using an ATDS or artificial or prerecorded voice. (Pls.' Mem. Supp. Mot. Summ. J. at 3, Doc. No. 47-3.) RPM moves for summary judgment in its favor on the same issue. (Def.'s Mem. Supp. Mot. Summ. J. at 10, Doc. No. 45-1). It also moves for summary judgment on the issues of whether it had William's express consent to call his cell phone, whether it is liable for calls made to a cell phone belonging to William's ex-wife, whether liability for some of the calls made to Alicia is barred by the relevant statute of limitations, and whether the Gillards can establish that RPM willfully and knowingly violated the TCPA.

The Court held oral argument on the motions on May 20, 2015. Upon consideration of the briefing on both motions and the parties' positions at oral argument, the Court denies the Gillards' motion and grants RPM's motion with respect to the calls made to William's ex-wife only. The Court denies RPM's motion in all other respects.

**Factual Background**

The following facts are undisputed. RPM is a debt collector with offices located in Lynnwood, Washington. (Pls.' Stmt. of Fact ¶ 6.) At all relevant times, the Gillards resided in Gilbertsville, Pennsylvania and were located within the United States. (*Id.* ¶¶ 1-2.) William had a cell phone with an assigned phone number ending in 0625, and Alicia had a cell phone with an assigned number ending in 4541. (*Id.* ¶¶ 5, 6.) William incurred a debt with Sprint, his cell phone carrier. (*Id.* ¶ 4.) Sprint retained RPM to collect this debt. (*Id.*) In an effort to collect the debt, RPM placed calls to the Gillards' cell phones using a Noble Systems Dialer. (*Id.* ¶¶ 7, 8.) RPM also utilized a third-party vendor named Global Connect to place calls to the Gillards' cell phones. (*Id.* ¶ 10.) In total, RPM and Global Connect made 172 calls to the Gillards' cell phones. (*Id.* ¶¶ 12-14.) These calls occurred between July 19, 2010 and December 12, 2010, then again between October 5, 2014 and October 17, 2014. (*Id.* ¶¶ 11, 14.)

**Legal Standard**

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in

support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252.

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). "When confronted with cross-motions for summary judgment . . . the Court considers each motion separately." *Wernicki-Stevens v. Reliance Standard Life Ins. Co.*, 641 F. Supp. 2d 418, 422 (E.D. Pa. 2009).

**Discussion**

RPM's use of an ATDS or Artificial or Prerecorded Voice

Both the Gillards and RPM move for summary judgment on the issue of whether RPM violated the TCPA by calling the Gillards' cell phones with an ATDS or an artificial or prerecorded voice. The Gillards assert that there are no genuine issues of material fact on this issue and they are entitled to judgment as a matter of law. RPM believes that the Gillards cannot establish that RPM called them using an ATDS or artificial or prerecorded voice without proffering expert testimony. The Court addresses each motion in turn.

The TCPA makes it unlawful "for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A). The TCPA defines

3

an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. 47 U.S.C. § 227(a)(1). In a 2003 Order, the Federal Communications Commission ruled that the TCPA's statutory language and legislative history showed that the central function of an ATDS is "the *capacity* to dial numbers without human intervention." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act*, 18 FCC Rcd. 14014, 14091–92, ¶ 132 (June 26, 2003). It therefore brought within the ATDS definition telephone systems that can dial without human intervention from a pre-programed list of telephone numbers. *Id.*

The Gillards move for summary judgment on the issue of whether RPM used an ATDS or an automated or prerecorded voice. They contend that "RPM's discovery responses in this case along with its public filings, depositions and declarations on record in other cases, as well as other administrative law and court findings conclusively establish that RPM used an ATDS to make calls to [the Gillards'] cell phones in violation of the TCPA." (Pls.' Mem. Supp. Mot. Summ. J. at 6.) The Gillards did not take any deposition testimony in reference to their own case. (*Id.* at 6 n.4.)

The Gillards' evidence is not sufficient to show the absence of a genuine factual dispute as to whether RPM used an ATDS to call the Gillards' cell phones. Much of the Gillards' evidence relates to incidents that occurred outside of the relevant time frame. For example, the Gillards present a declaration from RPM Chief Operating Officer Christopher Vittoz that was executed on November 6, 2013 and a letter that Global Connect sent to the FCC in 2006. (*Id.*, Ex. I, K.) They also present an Administrative Law Judge decision regarding a 2009 investigation of RPM's conduct by the Arizona Department of Financial Institutions. (*Id.*, Ex. F.) Yet the calls to the Gillards occurred in 2010 and 2014.

The Gillards also contend that RPM is collaterally estopped from asserting that it did not call the Gillards using an ATDS because RPM stipulated in another case that the telephone system it used to call another debtor met the TCPA's statutory definition of an ATDS. The Court, however, will not preclude RPM from contesting that the phone system used in this case does not meet the statutory definition of an ATDS simply because it decided not to contest that issue in another case. *See Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.*, 63 F.3d 1227, 1232 (3d Cir. 1995) (application of offensive non-mutual collateral estoppel is "subject to an overriding fairness determination by the trial judge."); *see also Parkland Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979) ("We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied.").

The Gillards' remaining evidence shows only how RPM's Noble Systems Dialer functions generally. There is no specific evidence to show how the Noble Systems Dialer functioned at the time the calls to the Gillards were placed. Therefore, the Gillards fail to show that RPM's telephone system met the statutory definition of an ATDS as it was configured and used at the time RPM placed the calls to the Gillards. *See Hunt v. 21st Mortg. Corp.*, No. 12-cv-2697, 2013 WL 5230061, at *4 (N.D. Ala. Sept. 17, 2013) (holding that to meet the TCPA's definition of an ATDS, "a system must have a present capacity, at the time the calls were being made, to store or produce and call numbers from a number generator."); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1376 (S.D. Fla. 2014) (denying plaintiff's motion for summary judgment where plaintiff did not show "that these broadcasts are transmitted without human intervention. It may be possible, if improbable, that Phaz2 employed individuals to transmit each broadcast at the predetermined time.").

In short, in moving for summary judgment with regard to the use of an ATDS, the Gillards ask the Court to draw an inference in their favor that because the Noble Systems Dialer had certain functionality and was used in a certain way in other contexts, it had the same functionality and was used in the same way with regard to the calls made to them. While that inference may be a reasonable one, it is not the only one. The Court cannot grant the Gillards' motion for summary judgment under such circumstances. *See Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) ("Summary judgment may not be granted if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed.") (quotation omitted).

The Gillards likewise do not present sufficient evidence to show the absence of a genuine dispute of material fact as to whether any of the calls made to them used an automated or prerecorded voice. The Gillards present no evidence to show that an automated or prerecorded voice was used for the calls that RPM made to them directly. With regard to the calls from Global Connect, the Gillards present a call script and testimony that RPM uses Global Connect to leave automated text-to-speech messages using voice broadcasting. But the Gillards once again do not present any evidence to show if or how the call script or automated voice broadcasting was used for the calls Global Connect made to them. The Gillards' motion is therefore denied.

RPM also moves for summary judgment on this issue. RPM argues that without expert testimony the Gillards cannot establish that RPM used an ATDS or artificial prerecorded voice. While expert testimony on these issues might be helpful to a jury, it is not necessary. Indeed, several courts have determined the issue without the help of expert testimony. *See, e.g., Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 225 n.11 (D. Mass. 2014) ("Defendant

contends, as a preliminary issue, that plaintiff's claim must fail because expert testimony is needed to determine whether LiveVox is an ATDS. Some plaintiffs have indeed employed an expert for this purpose, but others have proved their claims without the use of an expert. Viewing the evidence presented here as a whole, it does not appear that expert testimony is necessary to determine the question.") (citations omitted). The Court likewise rules that the Gillards do not have to present expert testimony to prove that RPM used an ATDS or artificial or prerecorded voice.

William's Prior Express Consent

It is permissible under the TCPA to place a call to a cell phone using an ATDS or artificial or prerecorded voice if the caller has the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A). RPM contends that it had William's prior express consent to contact him on his cell phone. It therefore believes that it is entitled to a judgment that it did not violate the TCPA with respect to the calls to William's number. The Gillards attack RPM's evidence on this point and dispute that William ever gave RPM express consent to contact him on his cell phone.

The Court need not wade into the evidentiary and substantive morass created by the parties on this point because there is a factual dispute as to whether and when William revoked any prior express consent, even assuming that he gave it.[1] Consumers can revoke their prior express consent and can do so orally. *See Gager v. Dell Fin. Servs. LLC*, 727 F.3d 265, 272 (3d

---

[1] In support of its argument that it had William's prior express consent, RPM submits an exemplar Sprint "terms & conditions" document attached to an affidavit from Stephanie Miller ("Miller"), a Pricing Manager to Sprint Corporation, that states "Sprint maintained [the exemplar terms and conditions] with Sprint cellular account holders in 2010." (Def.'s Mem. Supp. Mot. Summ. J. Exs. E, F.) Miller further states that under the exemplar terms & conditions "the Sprint account holder gave permission for Sprint to telephone and/or text the account holder at the cellular number in which he maintained an account" and that "[t]his is true for all Sprint cellular accounts." The Gillards argue that the Court should exclude Miller's affidavit because it is made without personal knowledge, fails to set forth facts that are admissible in evidence, and does not show that Miller is competent to testify to the matters asserted. They further argue that even if not excluded, the affidavit and exemplar are inadequate to show that William provided express consent under the TCPA. Because the Court finds that there is a factual dispute with regard to revocation of consent, even assuming that the affidavit and exemplar are admissible and establish William's prior express consent, the Court will not address the merits of these arguments at this time.

7

Cir. 2013); *Adamcik v. Credit Control Servs. Inc.*, 832 F. Supp. 2d 744, 751 (W.D. Tex. 2011). At his deposition, William testified that he was "sure [he] had" told RPM to stop calling him, yet there is nothing in RPM's account notes to show that William ever told RPM not to contact him. (William Tr. 44:16-22, Doc. No. 49, Ex. B; Case Declaration ¶ 9, Doc. No. 45, Ex. A.) Therefore, there is a factual dispute as to if and when William subsequently revoked any prior express consent that precludes summary judgment. *See Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) ("[A]t the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder."). RPM's motion for summary judgment on this point is denied.

Calls Made to the Phone Number Ending in 2671

RPM moves for summary judgment regarding 13 phone calls made to a phone number ending in 2671. This phone number belonged to William's ex-wife Christine Beeler, who is not a party to this action. The Gillards concede that RPM is not liable for these calls in this action. Summary judgment is accordingly granted in favor of RPM with regard to any alleged TCPA violation for calls to the phone number ending in 2671.

Calls Made to Alicia before November 3, 2010

RPM also moves for summary judgment with regard to six calls made to Alicia's phone number in September and October 2010, arguing that they are barred by the statute of limitations. The four-year "catch all" limitations period under 28 U.S.C. § 1658 applies to claims for violation of the TCPA. *See Hawk Valley v. Taylor*, No. 10-cv-00804, 2012 WL 1079965, at *7 (E.D. Pa. Mar. 30, 2012). Alicia was not named as a plaintiff when the complaint was filed on April 25, 2014. (*See* Doc. No. 1.) She was added as a plaintiff when the amended complaint was filed on November 3, 2014. (*See* Doc. No. 22.) RPM contends that any calls made to Alicia

8

over four years before she was named as a plaintiff are barred by the statute of limitations. The Gillards argue that the calls to Alicia were part of the same transaction or occurrence as the calls to William, and the addition of Alicia therefore "relates back" to the original filing date of April 25, 2014.

Third Circuit law allows claims by a late-added plaintiff to relate back to the original pleading if the defendants received notice so that they will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake, the action would have been brought with the original claims. *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995). A defendant receives adequate notice where the new plaintiffs allege injury caused by the same conduct set out in the original complaint, or there is an identity of interest between the original plaintiff and the new plaintiffs. *Yanes v. The Minute Maid Co.*, No. Civ.A.02-2712, 2006 WL 1207992, at *3 (D.N.J. May 3, 2006) (citing *Nelson*, 60 F.3d at 1014).

Here, the allegations in the initial complaint adequately embraced the calls to Alicia so that her addition as a plaintiff relates back to the original filing date. The initial complaint asserted TCPA liability for autodialed phone calls to William's cell phone in connection with a debt he allegedly owed to Sprint. (Compl. ¶ 6-7.) It was later discovered that RPM made some of these calls to a cell phone that was part of William's cell phone family plan but that was used by Alicia. Alicia was therefore added as a plaintiff in the amended complaint and liability for the phone calls made to her number were specifically alleged. (*See* Am. Compl. ¶ 15.) The alleged injury to Alicia was caused by the same conduct set forth in the original complaint, namely calls made to collect William's debt. The calls to Alicia's number are included in RPM's account notes on William's debt. (*See* Pls.' Mot. Summ. J., Ex. E.) The evidence that relates to William and Alicia's respective claims and RPM's defenses substantially overlaps. Therefore, RPM was

9

on notice that the claims against it might include the calls to Alicia so that RPM will not be prejudiced in mounting a defense with regard to those calls. RPM's motion for summary judgment on this point is denied.

RPM's Knowing or Willful Violation of the TCPA

RPM asks for summary judgment on the issue of whether any TCPA violation was willful or knowing. RPM argues that because of the "divergences of opinions and the lack of clear direction as to what constitutes an ATDS, RPM cannot be found to have willfully or knowingly" violated the TCPA. While a divergence of opinion could certainly militate against a finding of a willful or knowing violation, it would not preclude it. *See, e.g.*, *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1078 (9th Cir. 2015) ("Defendants argue that the uncertainty of the law makes A.V.E.L.A.'s infringement not willful. In this case, the uncertainty of the law weighs in A.V.E.L.A. Defendants' favor, but that consideration is only one aspect of the willfulness inquiry."). The Court will not remove this question from the province of a jury based solely on a professed uncertainty in the law. *See, e.g.*, *Desmond v. Phillips & Cohen Assocs., Ltd.*, 724 F. Supp. 2d 562, 570 (W.D. Pa. 2010) (denying summary judgment in Fair Debt Collection Practices Act case because "whether the content, duration, quantity, or nature of the calls/letters/messages at issue rises to the level of being intentional, willful, wanton or reckless is a question for the jury.").

An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.